JOURNAL ENTRY and OPINION
Defendant-appellant Clay Hills appeals from the trial court order that classified him as a sexual predator.
In his assignments of error, appellant (1) asserts the trial court's determination lacks an adequate foundation in the evidence presented, (2) takes exception to the trial court's allusion to certain scientific "studies" during its discussion of appellant's criminal record, (3) contends the timing of the classification hearing was improper, and (4) presents constitutional challenges to the statute pursuant to which the trial court proceeded.
This court concludes, however, that none of appellant's assignments of error have merit; therefore, the trial court's order is affirmed.
Appellant originally was indicted in this case in November 1987 on three counts as follows: (1) rape of a seven-year-old girl, R.C.2907.02(A)(1)(b); (2) rape of an eight-year-old girl, R.C.2907.02(A)(1)(b); and (3) gross sexual imposition upon the eight-year-old girl, R.C. 2907.05(A)(4). The first offense was alleged to have occurred in the summer of 1987; the second two offenses were alleged to have occurred sometime in 1986. Appellant entered a plea of not guilty to the charges and was assigned counsel to represent him.
Following several pretrial hearings, appellant entered into a plea agreement whereby, in exchange for his guilty plea to count one, the state would dismiss the other two counts. At the hearing, the trial court accepted appellant's guilty plea. The trial court then immediately sentenced appellant to a term of incarceration of five to twenty-five years.
In May 2000, the state filed a notice in the trial court advising it that the Ohio Department of Rehabilitation and Corrections ("ODRC") had recommended appellant "be adjudicated a Sexual Predator." Noting appellant had been scheduled for a parole hearing with a possible release date in September, the state requested a hearing on the matter pursuant to R.C. 2950.09(C).
The trial court responded by issuing notice a classification hearing would be conducted on June 15, 2001. In a separate journal entry, the trial court directed the warden of the institution in which appellant was incarcerated to "send an H.B. 180 packet" to the prosecutor. This packet included, but was not limited to, "the front of [appellant's] Master File, his Disciplinary Record and Institutional Summary Report, his Job and Lock Assignments, all certificates, his Security Classification Instrument, and all Presentence Evaluations and Reports." The trial court further ordered the prosecutor to provide copies of these materials to appellant's counsel.
Appellant's counsel subsequently filed a motion requesting the appointment of an independent psychological expert to examine appellant at the state's expense. Counsel also filed a motion to "dismiss" the forthcoming hearing on the basis the statute pursuant to which the trial court would be proceeding was unconstitutional. The state filed briefs in opposition to both motions.
On June 16, 2000 the trial court issued a journal entry denying appellant's motion for an independent psychological evaluation; however, the entry further ordered appellant referred to the court psychiatric clinic, thus necessarily postponing the hearing until the trial court received the evaluator's resulting report.
The trial court eventually conducted a hearing on July 26, 2000. Initially, the trial court noted appellant's motion to dismiss the proceedings was denied. It then noted for the record it had received the report from Dr. Aronoff of the court psychiatric clinic. The report was designated "Joint Exhibit A" and accepted into evidence by the parties by stipulation. The trial court concluded the prefatory matters by observing "all the preliminary information and data ha[d] been exchanged."
The prosecutor thereafter outlined the facts pertaining to the instant case. The prosecutor stated that the victims named in the indictment were appellant's nieces and that one of them also had witnessed appellant's anal rape of the other. To support these statements, the prosecutor introduced into evidence a copy of the police report, which contained a "brief narrative of what the victims told [the officers] with regard to the actions of [appellant]." Included in the narrative were: (1) an additional recounting by the victims of other sexual incidents that had occurred for which appellant had not been indicted; and (2) a description of a conversation with the victims' mother, appellant's sister.
The prosecutor also introduced into evidence a "Pre-Parole Personality Evaluation" of appellant that had been prepared in 1994 by two psychologists employed by the Marion Correctional Institution's "Office of Psychological Service." Finally, the prosecutor referred to appellant's own "account of the [instant] offense" recently given by him to Dr. Aronoff.
In subsequently addressing the trial court, appellant's counsel challenged the reliability of the prosecutor's evidence and urged the trial court to rely upon Dr. Aronoff's report. Counsel explained the tests Dr. Aronoff had performed and pointed out that, based upon those tests, the doctor had concluded appellant was at "low risk" to re-offend.
After the parties had presented their cases, the trial court "[took] a moment to go through the reports." The trial court then set forth for the record the following: (1) the applicable burden of proof for the proceedings; (2) the public policy reasons for the enactment of "H.B. 180"; and (3) the determinations it was required to make as the factfinder.
Thereafter, the trial court examined appellant's case in light of each of the statutory factors as follows:
 * * * A, the offender's age; he was 35 years old at the time of the offense.
 The second, B, the offender's prior criminal record regarding all offenses, including sex offenses. This offender has a prior petty theft record in Cleveland Heights Court, and he was sentenced on June 21st of 1977. Also, a possession of criminal tools record in East Cleveland, where he had served one-and-a-half — six months to five years, but that was suspended and he was placed on two years probation and on March 19th of 1982, that probation was terminated.
 There are not any prior sexual offenses, but I do want to note, and I know counsel is familiar with the literature regarding sexual offenders. Oftentimes they begin with theft offenses, robbery offenses, offenses of that nature which are crimes against trust, and they exhibit a lack of inhibition which sometimes escalates into sexual behavior, and I will take that into consideration. However, again, there are no prior sex offenses in this case.
 The age of the victim, in this case, it is the Court's finding that there were actually two victims. There was a seven-year-old victim and a nine-year-old
victim.
 Even assuming again that the Court would take into consideration [defense counsel's] argument about the incident in the movie theater and the allegations by Pamela Robinson, the mother of the victim and sister of the defendant, that they have been sexually abused, even setting that aside that that wasn't proven, we don't have an evidentiary standpoint, assuming the argument again that the Court doesn't view those two as victims, I certainly make a finding on the record that to have a nine-year-old watch you engage in anal intercourse with a seven-year-old, does designate them a victim; making them witness that sexual activity is enough.
 We do have allegations made on the record about other sexual conduct, but even with those not being proven, it's troubling to this Court and I want to state for the record that having a nine-year-old watching that activity is tantamount to having them engage in that activity. It's not something any nine-year-old should have to be a witness to.
 Also, we have E, whether the offender used drugs or alcohol to impair the victim or prevent the victim's resistance. That doesn't apply.
 F, whether the offender completed any prior sentence and, if the prior sentence was a sex offense, whether the offender participated in available programs for sexual offenders. That did not occur in a prior offense, but the 1994 report does indicate that this offender did attend, at Marion, some sexual counseling in a sex offender program for a long period of time but it also states that the patient had difficulty in describing his progress in group and that he did not deal well with everyday life situations and stresses. So, although he attended therapy, it doesn't appear as if that therapy session went very well.
 Then you go to G, any mental illnesses or disabilities of the offender. In one of the reports, the 1994 report before this Court, it indicates that the offender is passive-aggressive and has that personality disorder, and also engaged in episodic aggressive behavior. So certainly he carries those monikers.
 Our psych clinic has run a series of assessments, that [defense counsel] has eloquently gone through, and has made various determinations that actually bode well for the Defendant, but at the end of the report they do say the ultimate issue of whether the Defendant should be adjudicated a sexual offender is respectfully left for the Court to decide. But I do take into consideration that he did seem to perform quite well on these assessments as set forth, but he did have some mental illness and some problems.
 Then you have to look at H, the nature of the offender's sexual activity with the victim and whether it was part of a demonstrated pattern of abuse. And certainly as set forth on the record, this offender has indicated that when he abuses alcohol, he has a hard time curbing his desires and he has a history, maybe even perhaps dating back to abusing his own sister while they were growing up, of engaging in inappropriate sexual behavior with children. That's, of course, of concern to this Court.
 Then we have "I," whether the offender displayed or threatened cruelty. I think the very fact that the Defendant engaged in anal intercourse with a seven-year-old in the presence of a nine-year-old adds a certain aspect of cruelty because, again, you're victimizing the other person in the bedroom.
 J, any additional behavioral characteristics that contribute to the conduct. For that I take into consideration we are talking about the offender's niece and that she had a trust in the offender.
 Even the incident report and the version of facts given by the Defendant indicate that the reason the Defendant was able to get into bed with the victim was that he was the victim's uncle and the victim trusted him. And I believe there was some statement made that she was afraid of the dark or afraid of the night; not knowing that a heinous crime would ensue.
 Taking into consideration the totality of the factors, even despite the psychiatric report provided by Dr. Aronoff, it is this Court's finding that Mr. Hills is a sexual predator.
(Emphasis added.)
The trial court entered judgment to that effect; appellant has timely appealed from the trial court's order. He presents five assignments of error for review, which will be addressed in logical order.
Appellant's fourth assignment of error states:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO DISMISS THE PROCEEDING BECAUSE AN INDIVIDUAL'S PROTECTABLE LIBERTY INTEREST IN PRIVACY IS ENCUMBERED BY THE SEXUAL PREDATOR LABEL AND THE FACTORS LISTED AT R.C. S2950.09(B)(2) VIOLATE THE DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I OF THE OHIO CONSTITUTION, WHERE THE LEGISLATURE DID NOT PROVIDE TRIAL COURTS WITH GUIDANCE ON HOW THE CLASSIFYING FACTORS SHOULD BE APPLIED.
Appellant argues the statutory scheme set forth in R.C. 2950.01 etseq. violates constitutional guarantees of due process of law and equal protection under the law since it fails to provide sufficient guidance to the trial court regarding application of the factors listed in R.C.2950.09(B)(2).
This precise issue, although differently phrased, previously has been addressed and rejected by this court in State v. Steele (Sept. 7, 2000), Cuyahoga App. No. 76205, unreported. It also has been addressed and rejected by the Twelfth District Court of Appeals in State v. Wilson
(Nov. 3, 2000), Fayette App. No. CA99-09-024, unreported, cited with approval, State v. Copeland (Dec. 18, 2000), Cuyahoga App. Nos. 77333, 77500, 77501, 77502, 77517, unreported. See, also, State v. Green (Apr. 26, 2001), Cuyahoga App. No. 77771, unreported; State v. McKinney (Jan. 25, 2001), Cuyahoga App. No. 77659, unreported; State v. Gibson (Dec. 7, 2000), Cuyahoga App. No. 76875, unreported.
Hence, appellant's fourth assignment of error is overruled.
Appellant's third assignment of error states:
 THE TRIAL COURT ERRED WHEN IT DECIDED TO CONDUCT THE SEXUAL PREDATOR HEARING AGAINST THE APPELLANT WHERE THE APPELLANT WILL NOT BE RELEASED FROM PRISON FOR AT LEAST TEN YEARS IN VIOLATION OF THE REVISED CODE AND BOTH THE OHIO AND UNITED STATES CONSTITUTION (SIC.).
Appellant argues the timing of the classification hearing is constitutionally improper. This argument also previously has been addressed and rejected by this court. See, State v. Steele, supra; Statev. Green, supra; State v. Abelt (May 31, 2001), Cuyahoga App. No. 77754, unreported.
Consequently, appellant's third assignment of error also is overruled.
Appellant's fifth assignment of error states:
 R.C. S2950.09(C) VIOLATES THE DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I OF THE OHIO CONSTITUTION, BECAUSE A WRITTEN CHARGE WAS NOT PROVIDED TO THE APPELLANT.
Appellant argues the lack of written notice of the "evidence and reasoning" underlying ODRC's recommendation offends constitutional guarantees of procedural due process. This court, as it has previously, disagrees. See State v. Copeland, supra; State v. McKinney, supra.
Based upon the foregoing decisions of this court, appellant's fifth assignment of error also is overruled.
Appellant's second assignment of error states:
 THE APPELLANT'S HEARING VIOLATED THE CONCEPTS OF SEPARATION OF POWERS BECAUSE THE TRIAL COURT RELIED ON EX PARTE KNOWLEDGE REGARDING "STUDIES" LINKING PETTY THEFT TO SEXUAL RECIDIVISM WHEN SUCH STUDIES WERE NOT PROVIDED TO COUNSEL.
Appellant asserts the trial court's reference to "literature regarding sexual offenders" in discussing his criminal record was so constitutionally improper as to render its ultimate decision reversible. Appellant's assertion lacks merit for three reasons.
First, the trial court gave no indication it actually relied upon such "literature" in making its decision. Second, the Ohio Supreme Court, itself, has referred to scientific "studies" as worthy of consideration in State v. Eppinger (2001), 91 Ohio St.3d 158 at 160-161. Cf., State v.Krueger (Dec. 19, 2000), Cuyahoga App. No. 76624, unreported. Third, despite the trial court's pre-fatory statement that appellant's counsel was "familiar" with such literature, appellant failed to object to the trial court's consideration of it. Hence, he has waived his argument with respect to this issue. State v. Cook (1998), 83 Ohio St.3d 404, 426;State v. Williams (1977), 51 Ohio St.2d 112.
Based upon the foregoing, appellant's second assignment of error is overruled.
Appellant's first assignment of error states:
 THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE "BY CLEAR AND CONVINCING EVIDENCE" THAT APPELLANT "IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES."
Appellant argues the trial court's classification of him as a "sexual predator" lacks foundation in the evidence presented. He contends the state's evidence was inadequate to establish the likelihood of his future criminal sexual conduct. Based upon a review of the record, appellant's argument lacks merit.
R.C. 2950.09(B)(2) provides the factors a trial court is to consider in making a classification determination. Although many of the factors set forth "involve what may be considered old conviction data' which may be found in the court's file," the list is not designed to be exclusive.State v. Eppinger, supra at 164. Rather, the trial court "shall consider all relevant factors." (Emphasis added.)
R.C. 2950.09(B), in the first instance, does not allocate which party has the burden of production of evidence to the trial court; nevertheless, the Ohio Supreme Court has declared it is the state's responsibility. State v. Williams (2000), 88 Ohio St.3d 513 at 533. Since the proceedings are not punitive but rather are both "civil in nature" and akin to "probation hearings," the Ohio Rules of Evidence do not strictly apply. State v. Gowdy (2000), 88 Ohio St.3d 387 at 398; Statev. Cook, supra at 425. Consequently, the state sustains its burden by providing "clear and convincing evidence," i.e., "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established."State v. Eppinger, supra at 164, citing Cross v. Ledford (1954),161 Ohio St. 469, 477.
Clearly, the trial court is the trier of fact in sexual classification hearings. On appeal, therefore, this court's role is to determine whether the weight of the evidence supports the trial court's decision. State v.Cook, supra at 426; State v. Childs (Apr. 19, 2001), Cuyahoga App. No. 78076, unreported. Decisions that are supported by competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. Seasons Coal v. Cleveland (1984),10 Ohio St.3d 77; State v. Cook, supra; State v. Steele, supra. Moreover, this court must be mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
A review of the record in this case reveals the trial court's decision was supported properly. Moreover, it is clear that in reaching its decision, the trial court conducted a hearing that, in many respects, closely approximated what the supreme court in Eppinger has proposed as the "model" for "procedure."
At the trial court's request, the prosecutor and defense counsel identified on the record those portions of the case file that both "relate[d] to the factors set forth in R.C. 2950.09(B)(2)" and were "probative of the issue of whether [appellant] is likely to engage in the future in one or more sexually oriented offenses." The trial court insured this record was preserved clearly and accurately for purposes of appeal. Additionally, the trial court permitted each party to "present expert opinion" by written report to assist it in its determination. Finally, the trial court considered each listed statutory factor and discussed on the record the particular evidence and factors upon which it relied in making its determination regarding the likelihood of appellant's recidivism.
The trial court relied particularly on the evidence that appellant had victimized not one, but both, of his nieces over a period of time. Moreover, appellant's participation in a sexual offender program in prison had not resolved his problem; rather, it indicated appellant suffered from a continuing "personality disorder." Finally, the trial court noted Dr. Aronoff had conceded in his report the "ultimate issue" of appellant's classification was for the court to decide.
The trial court acted within its prerogative to assign less weight to Aronoff's assessment of appellant's potential for recidivism. First, Aronoff's assessment was deficient in that it failed either to consider the question of whether appellant had a predilection to incest or to assign any significance to the fact that appellant had no access to little girls while incarcerated. Second, appellant's narrative to Aronoff of how the arrest in the instant case came about was notable.
Despite being indicted on two separate counts relating to his "older niece," appellant refused to acknowledge to Aronoff any wrongdoing in this regard; he denied anything had "happened" between them. Furthermore, in describing the incident with his younger niece, appellant related that while babysitting, he lay down on the bed with her to comfort her because she was "scared of the dark," then "got carried away" and "humped her and got [his] jollies off." Appellant admitted his other niece "must of seen what happened."
These statements are particularly enlightening as to predicting appellant's future conduct when compared to the police report and the psychological assessment performed in 1994. In the police report, both victims indicated appellant had molested them on more than the three occasions for which he had been indicted. Appellant's sister made similar accusations. However, in discussing his future plans with the psychologists, appellant indicated his sister was "the only support that he ha[d]" and therefore he planned "to stay with his sister if paroled." The psychologists concluded appellant had unrealistic expectations, had not fully accepted responsibility for his actions, was "socially and emotionally immature," and possessed the potential for "episodic aggressive behavior"; thus, he had a continuing "need" for counseling in programs for sexual offenders.
In short, based upon the evidence presented in this case, this court cannot find the trial court's determination was unsupported. State v.Cook, supra; State v. Malinowski (Sept. 6, 2001), Cuyahoga App. No. 78626, unreported; State v. Bouyer (Aug 23. 2001), Cuyahoga App. No. 78547, unreported; State v. Vintson (June 7, 2000), Cuyahoga App. No. 78382, unreported; State v. Childs, supra; State v. Steele, supra; Statev. Wilson, supra; cf. State v. Miller (May 17, 2001), Cuyahoga App. No. 78032, unreported; State v. Grimes (Apr. 12, 2001), Cuyahoga App. No. 78496, unreported.
Therefore, appellant's first assignment of error is overruled.
The trial court's order is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. CONCURS. ANNE L. KILBANE, J., CONCURS INPART AND DISSENTS IN PART WITH SEPARATE OPINION.